171064 U.S. v. Weems 171066 U.S. v. Sabetta 171067 U.S. v. Rodriguez Thank you. Mr. Malkin, good morning. Good morning. May it please the Court, may I reserve two minutes for rebuttal? You may. So the Rhode Island defense of assault with a dangerous weapon has two basic components, an assault component and a battery component. The district court here decided that the assault component was not an ACC predicate because according to the district court, as a matter of Rhode Island law, this offense can be committed with a mental state of mere recklessness. Our primary argument on appeal is that that conclusion was incorrect. It's worth pausing to note that the district court tentatively concluded, at least, that the battery component of the offense likely does qualify as an ACC predicate. It said it was skeptical of the defense argument. To the contrary, unless the court has a different preference, I'd like to begin with the assault component and then move to the battery component because it's incumbent on us, the way we've framed the issue on appeal, to satisfy you that both components satisfy the ACC. So I'll go with assault and then I'll move to battery. On the assault front, the thing to notice right from the get-go is that there is no Rhode Island precedent at all in the history of Rhode Island jurisprudence which says that you can commit this offense with a mental state of mere recklessness. What the Supreme Court of Rhode Island has said, in contrast, is that there are three important standards. The first is that ADW requires proof of an unlawful offer to do corporal injury to another. Under such circumstances, it may create a reasonable apprehension of immediate injury unless the person so threatened takes action or inaction to avoid it, coupled with a present ability to carry the offer into effect. The second statement is that to constitute an assault with a dangerous weapon, it is necessary that the weapon should be presented at the party intended to be assaulted, within the distance at which it may do execution. And the third statement is that the actual present ability of the defendant to inflict harm on the victim by using a dangerous weapon is an element of the offense of assault with a dangerous weapon. In light of those three standards, we think it's just inconceivable that this crime could be committed with a mental state of mere recklessness. What is it about those standards that causes you to reach that conclusion? The language of intent which permeates all three of the statements that I just read, in particular the second one, to constitute an assault with a dangerous weapon, it is necessary that the weapon should be presented at the party intended to be assaulted. But beyond that, if you look at the Baker decision, the 1897 decision, that led to two of the three standards that I just mentioned, that first propagated those standards, what you see is that case involved a situation where the defendant himself deliberately fired a pistol at the victim intending to frighten him, narrowly missing him, and the court on appeal upheld jury instructions which required the jury to find there must be an intent to commit an assault, or else there can be no assault. That's clearly the best language of the 3.2. But then what do we do with the fact that we have a 1988 Rhode Island Supreme Court decision that, as I read it, omits that best language when it summarizes the offense? Jeremiah. No, the Jeremiah case, well, let's step back. All three of those standards that I mentioned have been mentioned time and time again by the Rhode Island Supreme Court. The fact that Jeremiah doesn't mention one of them isn't dispositive, because you'll notice that in the case of each of the three statements, there are half a dozen or more Rhode Island decisions, including some recent ones, that rearticulate them. So I wouldn't say that it's particularly significant that one of the cases doesn't mention one of those standards. But then what are you left with? You're left with offer? Well, no, there's offer. How does offer help you? Well, because if you're offering to somebody to commit an assault, to commit an act of violence against them, the language of offer is relevant of intent. But what is that? I mean, the quarterback's bad throw offered the defense an opportunity to intercept the ball. There's no intent there. Well, it's not a very natural reading of the word offer. I mean, I suppose you can bend the word to make it apply in a setting like that, but the most natural interpretation of the word offer is that you are actually presenting your weapon to the victim and you are offering to strike them with it, offering to put them in fear of... In Rhode Island, if I get in a car drunk and drive and plow into someone and injure them, can I be convicted under this dimension? No. How do we... there's case law that... No, there's... well, the sheer absence of any cases saying that ADW can cover drunk driving itself says something about it, but... So your position is, aside from the abstract about how to read these, is that type of activity cannot be criminalized under this provision? It absolutely cannot be covered. And if you look at the Rhode Island ADW case law... Then we have a problem. Then we have a problem in light of Bennett, Wong, and Windley, which is why our position on appeal has to be now that this crime cannot be committed with a mental state of mere recklessness, and that was our position in the district court as well. If you look at Rhode Island case law in ADW, you don't find a single case involving reckless conduct. Even a case cited by the defendant for the first time on appeal, the touted Boudreaux case from 1974, doesn't help them on that front. This is a case where the defendant says he's out to get the victim. He goes to the victim's house. He fires a gun multiple times into the dwelling. It just so happens the victim was sound asleep at the time, doesn't realize that there's been an assault. But that case is clearly one where there was a deliberate attempt either to injure the victim or to cause the victim to fear imminent bodily injury. Do we know what the instructions were in these cases from this record? What instructions? Jury instructions. No, because I believe each of the defendants pled guilty at all. I believe so. Do we know what the model instructions are in Rhode Island? There are none, and this is another source of dispute. The district court cited what it called model jury instructions. In fact, as we pointed out in the district court, and as even the defense conceded in the district court, these are not model jury instructions. What they are, it's an internal monograph prepared by the Rhode Island Attorney General's office as a guide to its prosecutors essentially saying this is the kind of jury instruction you should ask for. However, note that even those Rhode Island AG instructions do not say that mere recklessness is sufficient. So there's a twofold problem. One, these aren't model jury instructions. They haven't received any judicial blessing in Rhode Island. And number two, they don't even say that the crime can be committed with a mental state of mere recklessness. No, but the question is whether the things that they do say, malice and wantonness, end up being the functional equivalent of that. And I understand you have arguments why not. Maybe this is too abstract a question, but what are we supposed to do when there are no model instructions, there's no actual instructions, and there's language that, you may contest this, language in state Supreme Court opinions that is unclear as to whether it would permit an offense like drunk driving to constitute assault with a deadly weapon. And I say that in part because we know other states that do treat ADW as something that can be committed that way. Suppose it was, there's some lack of clarity in that regard. Do you win or lose under the precedent? Well, obviously we dispute that there is that lack of clarity. It depends on... A level of unclearness is the question. If there's a grievous ambiguity, then the rule of lenity kicks in. I'm not sure if that was the... The odd thing is that if there was a grievous ambiguity, the lenity might kick in at the state law, which would narrow it, which would hurt the defendant. What I'm asking is for ACCA purposes, when I'm trying to figure out what a state law offense encompasses, what is the government's view of the level of clarity I have to have as a judge about whether that state law does encompass it. Obviously, if it's perfectly clear that it doesn't encompass it, you win. If it were perfectly clear that it did encompass it, you'd lose. Suppose it's not perfectly clear either way. What's the government's view of what we're supposed to do in that situation? Well, it's really hard to articulate some sort of standard which captures the middle ground case, like a standard of review kind of sort of talismanic sort of statement that you could rely on and say, well, it rises to this level of uncertainty, so the government loses. I mean, it's really, there's no way to sort of capture that in words, I don't think. I don't really have another tool available. I think you have to be reasonably confident that you're giving a correct statement of Rhode Island law. I mean, you're never going to be completely confident, particularly in light of... Could we certify it? Well, you certainly could, and we wouldn't object to that if you wanted to go that route. It is a case where none of the defendants currently is incarcerated, so we do have the luxury of time, I suppose. That's an argument in favor, possibly, of certification. If you do decide to go down that path... We'd be certifying what Rhode Island law was at the time of the convictions? Well, that's an interesting, that's another sort of question. I mean, in this court's jurisprudence post-Johnson, it appears to be the case that you are looking at the law as it now stands, and the assumption is always that that is the law as it applied at the time of the conviction. The court has never, to my mind, teased out explicitly what happens in a situation where, let's say the Rhode Island Supreme Court says, well, we think that ADW can't be committed with a mental state of mere recklessness. However, at the time these defendants were convicted, that would require further briefing, and we'd have to explore the ramifications of that kind of scenario in a subsequent round of briefing, I would think. What do you do about, as I understand it, this is a general intent crime in Rhode Island, and general intent crimes, as I understand them, usually mean that the intent must be to move your body in the manner that you move your body, but you don't actually have to have the specific intent to have your body do the effects of your movement. That, to me, sounds... Well, there are a couple of points. First of all, that doesn't erect a mere recklessness standard, but beyond that, if you look at the SIVO, S-I-V-O case cited by the defense, 2007 Rhode Island Supreme Court decision, you begin to see the problem with this whole general specific intent distinction. May I finish? Go ahead. Because the Rhode Island Supreme Court, in that case,  inflicts upon a child serious bodily injury, and yet concluded that that was a general intent crime. And acknowledged right in the decision that this whole distinction is a slippery one anyway, so you can't really say, because it's labeled general intent, that somehow means recklessness is enough. Can I just follow up on SIVO? Because if I understand it, in some ways that case is even better for you than that, in the sense that, if I get it right, the child abuse offense there originally was codified in a statute that gave no mens rea, and the state supreme court construed the statute, therefore to have a mens rea under the model penal code of as minimal as recklessness. The statute was then amended to omit the recklessness element, and yet was still deemed a general intent offense, and that mattered because the actus reus was child abuse, and the question was, did you intend the serious injury that followed from the child abuse? So, here, what's the actus reus? The assault? Do you see what I'm saying? It depends on the bodily movement, like Judge Kayaba said. Well, it depends on whether you're talking about the assault or the battery component of the offense. I'm talking about the assault offense. The assault offense, the way we see it, is it's an intent to threaten bodily injury is what it amounts to. See, that sort of collapse, that means that I'm intending the injury part of it, and I thought in CIVO they suggest that, because it's a general intent crime, the actus reus of child abuse there, you didn't have to intend the injury. If the injury followed, that would be enough as long as you intended the child abuse. Well, I mean, we know from the Baker decision that you do have to have either the intent to cause injury or intent to frighten, and frighten in this context means... We know that's sufficient. We don't know what's necessary from Baker. Well, we know... Because it wasn't an issue in Baker. There was only two possibilities. They upheld both the jury instructions and the sufficiency of the evidence in Baker, and the jury instructions are the ones that I just quoted. But there was no doubt that he was intending to frighten. Right. Yes, that's true. But the intent was eight. It's sufficient. It wasn't... You see what I'm saying? They didn't have a case in which it was possible that you didn't even have that intention. I see what you're saying, but... But that's the whole issue. But in addition, I mean, I'm way over my time now, but, you know, the Clifton... There are the two cases that we cite, Clifton and Franco, which use the intent to harm language right in them. The district court said they were aberrations, but we disagree with that. Thank you. Thank you. Ms. Muenzer, good morning. Good morning, Your Honors. Judith Muenzer representing the appellees. I think that the question about what do you do when there are no model instructions or actual instructions and the language is unclear goes back to Taylor, Shepard, and Mathis, and Faust's description of Taylor's demand for certainty in determining whether the offense is or is not classified as a violent felony. So you would need, if you have sufficient ambiguity, then you don't have the demand for certainty that Taylor has. But isn't that usually with respect to which of the potentially qualifying offenses you were convicted of? This is a separate issue, which is certainty about what an element that we're hypothesizing you were convicted of and we're certain that you were convicted of that prong of the offense, what the range of conduct that offense covers. That's a different question than Mathis confronted, or even that we... I thought it would be something like we say is there a realistic probability. Well, I don't think that any court has articulated a standard beyond the demand for certainty, and I don't think that it's limited to whether which prong of an offense... Well, we do have the standard in envisioning... I mean, obviously we have a statute that comes right out and says recklessness is enough or jury instruction, then we're all set. But then when we have something where there's some arguable ambiguity you can tease out of the statute or the court's definition of it, aren't we constrained by not coming up with fanciful examples? In other words, our imagination can't run too far amok. And one of the ways we've dealt with that, going back to Fish, is we say, well, we've actually got an example where the state did enforce the statute in a drunk driving case, so voila. Here, I think one of the problems you have is that, as I understand it, in 100 years, no one can find any example of a case like a drunk driving case that actually crystallizes the application of this in the way that the district court has read it. Well, Judge Cognato, you also said in White v. Lynch that the absence of a precise case on point doesn't prove the point. And I do think that... Rhode Island has not used the word recklessly. They've used the word wantonly. And so the issue is, is wantonness the equivalent of recklessness? And I think that Boudreau is an example of reckless conduct. Reckless conduct, it does not have to be unintentional. Massachusetts defines it as the intentional commission of a reckless act. So, yes, he deliberately shot. He intended to shoot at the house at 3 o'clock in the morning on July 5th after having an altercation with one of six boys who live in the house on July 4th. But that doesn't mean that he was intending in the sense of a specific intent to injure or to... Well, it's defined in Baker as an attempt or offer with force or violence to do a corporal hurt, whether from malice or wantonness, or putting another in fear of violence. So the injury is incorporated into the act. Well, it doesn't require actual injury. Right, but the threat of injury. A reasonable person would perceive that they could be injured. For example, if someone shot on the 4th of July shoots a gun out in the air without moving around to see who's there and it's within and there are people around, that would be a reasonable person seeing that, who is within the range of those shots may feel fear. And it would be perhaps reasonable to do so. But that doesn't mean that the person who was shooting the gun was not simply acting recklessly, not considering the consequences. So your view of the drunk driving example is covered by the statute? I think so. I believe that there is a Rhode Island case and I will submit a 28-J letter addressing that. I can't put my finger on it right now. Does Rhode Island apply a rule of lenity? In the state court? Yeah. I have not seen, none of the cases dealing with assault and battery have discussed the rule of lenity. But most of the cases that both parties have cited have facts that are clearly intentional. Yeah, but I'm just wondering, the irony is I would imagine a defense counsel in Rhode Island who had a defendant charged with ADW for drunk driving would be making a somewhat different argument than you're making now about what the statute covers. And one of the tools that that defense counsel might invoke would be the rule of lenity as a good reason to say when there's uncertainty, why would you say that there's notice to the defendant that he could be charged for ADW under this language? And if all that was right, that would obviously be a problem for ACCA purposes. I'm trying to put those two pieces together, which is you've got unclarity about a state law, which produces uncertainty about a federal statute. And courts have noted the tension between how the state wants to define its crimes for its purposes and what ACCA requires because state prosecutors would more often than not want the broadest possible scope that you could have to get a conviction. But that's not what ACCA requires. ACCA has a much more limited definition. I think the point is suppose the state had a statute that says if there's any serious ambiguity, so you're not sure when reading it, then always read it in the narrowest way. Then you'd be out of luck here if the state had a statute like that because we would have to find that it clearly did cover recklessness or else that state statute would cause us to read this narrowly. And so I think the question is, is there any lenity-type doctrine that would be a substitute for that type of statute? As I said, I have not seen the rule of lenity invoked. But maybe your answer is it's unclear whether there is such a thing and then that helps you track the purposes, right? I think that the lack of clarity throughout the Rhode Island law helps in this sense because in both Bennett and Winley, this court used the rule of lenity to say that neither of those statutes, that recklessness... Yeah, but there it was clear that the state law encompassed the reckless conduct. That makes total sense to apply lenity to act in that circumstance. Here we're trying to figure out what does the state law encompass. Well, I'm suggesting that by... I agree that it is gravely ambiguous, in which case I would think that you would apply the rule of lenity in determining whether or not one should be equated with recklessness. And in addition to Boudreaux, which dealt with firing the shots, there is also Ashmus where the defendant was robbing a jewelry store and he shot in the direction of an employee after ordering him to turn over the jewelry. And the court affirmed a conviction that charged ADW against a customer who was standing around five feet from the gunman when he fired at the employee. And the defendant didn't point the gun at the customer or address him directly or threaten him directly in any way. And yet that ADW conviction was upheld. And I'd suggest that those are factual circumstances that suggest a mens rea of recklessness vis-à-vis the customer, not perhaps vis-à-vis the employee. So I think there are cases in Rhode Island that do support that. So is that the case? If we ask sort of what's your best case that we should look at for actually trying to see an application that would suggest recklessness, is that the one? I would suggest that Ashmus and Boudreaux are the two that have a fact pattern that could be described as reckless conduct. Tim, what's your position on certifying a question to the Rhode Island Supreme Court? That's certainly an option for this court, but I believe that under Faust the court would have to be looking at what was Rhode Island law at the time of each defendant's conviction. Well, is it your position that whatever it is now is likely to be different from what it was then? I mean, suppose we got an answer from the Rhode Island Supreme Court that says based on Baker our law has always been X. That would be dispositive. Sure, because Baker certainly preceded any of these other cases. So the only way you'd have a problem is if they came back and said, well, we don't know what it was then, but we can tell you what it is now. Because if that's the answer we got, I suppose that would be potentially helpful in this case. We don't know what it was suggests it wasn't clear. It wasn't clear, there's ambiguity, and it should not qualify as a violent felony. So you're saying if we decide to certify, then we have decided your way, that it's unclear. And we therefore don't need to certify. We've taken a step in that direction. Well, you'd just be saying that we'd be certifying because what's unclear is whether it's unclear. Right? I mean, that's the question, right? Well, I mean, the question is what is the status of the intent required, mens rea. But your position is so long as it's unclear what that status is, you win. Yes. So the relevant thing that would cause us to certify is if we weren't sure whether you're right about whether it's unclear. I mean, if this court decides that it is ambiguous and unclear, then I think that under Bennett and Winley that we would prevail here, that it would not be sufficiently certain under Taylor to qualify as a violent felony. And I think that some of the language of intent that is used in these cases is not the type of intent that would qualify it as a violent felony, but is kind of a shorthand for mens rea, the criminal intent required. That could be a reckless intent as well as intentional or even criminal negligence. And when you say the person intended to be, is that a way of defining who the victim is and not necessarily discussing what form of intent is required? In the Segal case, the way I read it, and I don't know if I read it right, they treated the actus reus as child abuse, not the physical act of moving a child into hot water. The actus reus actually had to be child abuse. And then for the offense to be committed, it had to be child abuse that caused serious injury. Is that right? Yes. That's how I understood the elements. I think there was a question about whether the child was put in the water or whether the child got into the water. And they never resolved what the act was. No, I don't mean the act by the defendant, the conduct. I mean the act under the offense, the actus reus. The court seemed to treat the actus reus as child abuse. Yes. But the offense that they were being charged with was child abuse that causes serious injury. Is that right? I believe so. Okay. The court then says, well, because it's a general intent crime, the person who commits the child abuse doesn't have to intend it by abusing the child to create, to cause that serious injury. It's enough to prove that serious injury resulted from the intended child abuse. Okay? If I try to translate that to ADW, how do I do it? Could you see the problem? Because it depends on what the act is. Well, there are different, I think part of the issue, problem, is that there are different acts that can constitute assault. And the court has defined assault in a number of different ways. It's the same problem, then. Yeah, it's the same problem of not having a concrete definition to deal with. So just at the end, it seems to me, you're left with a number of ambiguities, and those ambiguities are not enough to support a mandatory minimum 15-year sentence under ACCA. So if there are no further questions, we'll rest on the briefs for the other issue. Thank you. Let me just very briefly return to the initial question about what sort of standard should you use for the level of certainty that you need to make the legal determination. Perhaps the closest analog in Supreme Court case law is the standard used in the categorical approach realm when the Supreme Court says that to find that a state statute creates a crime outside the generic definition of a listed crime in the federal statute requires more than the application of legal imagination to a state statute's language. It requires a realistic probability, not a theoretical possibility, that the state would apply its statute to conduct that falls outside the generic definition of the crime. That may be the closest sort of analogous statement about level of certainty that you can hang your hat on. And in light of that, we think that if you are reasonably confident, sort of paraphrasing that standard, that Rhode Island would not apply this statute to conduct involving a mental state of mere recklessness, that's sufficient. And that's the most you can do, and you don't need a higher level of certainty than that. But if you have any doubts on that score, certification might be a possible route. If you do decide to go down that route, we would just ask you to consider providing the Rhode Island Supreme Court with a briefing of the parties in this case so that they're not starting just from scratch, that they have some of the context and the benefit of the arguments of both sides. Unless there are no further questions, we'll rest on our brief. Thank you. Thank you.